## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSPPI

NORTH POINT RX, LLC,

                Petitioner,

vs.

KEY THERAPEUTICS, LLC, a/k/a KEY
THERAPEUTICS, INC.,

                Respondent.

Civil Action No. 3:25-CV-20-KHJ-MTP

### PETITIONER'S FIRST MOTION FOR CONTEMPT, SANCTIONS, AND RECEIVERSHIP

Petitioner North Point RX, LLC ("North Point") by and through its undersigned attorneys, submits this Motion for Contempt, Sanctions, and Receivership pursuant to Federal Rules of Civil Procedure 66, 70(a), and 70(e), as well as this Court's inherent authority.

On May 19, 2025, this Court granted North Point's petition to confirm the arbitration award and ordered Respondent Key Therapeutics, LLC ("Key") to:

1.    deposit in the Bank Account opened and maintained in accordance with Section 3 of Schedule A to the Agreement the sum of $500,000;

2.    comply with the requirements in Section 3 and deposit in the Bank Account the amount of $2,339,602.88, which represents the "Gross Sales," as defined in the Agreement;

3.    not make any disbursements from, or otherwise encumber, the Bank Account, except (i) to pay "Commercialization Expenses" as defined in Section 3, or (ii) as otherwise approved in writing by North Point, which approval shall not be unreasonably withheld; and,

4.    restore North Point's access to view transactions occurring with the Bank Account and restore North Point's visibility to the Bank Account.

EXHIBIT
Z

To date, Key has not complied with numbers 1, 2, or 4. And because North Point does not have access to the bank account referenced in the Order, North Point cannot say whether Key has complied with number 3.

This complete disregard for this Court's order and final judgment warrants a harsh punishment. Accordingly, for the reasons stated in North Point's memorandum in support of its motion, North Point respectfully requests that this Court find Key in contempt and award sanctions that includes (1) leave for North Point to file a petition for its fees incurred by North Point in prosecuting the arbitration claim against Key, bringing the Petition to Confirm, and bringing this Motion; (2) a daily fine against Key and Mr. Sims; and (3) the appointment of a receiver to oversee Key and uncover the whereabouts of the funds to ensure compliance with the Order.

Date:  July 3, 2025                                  Respectfully submitted,

                                                    s/ *Mitch McGuffey*
                                                    C. Mitch McGuffey (MS Bar No. 104986)
                                                    FORMAN WATKINS & KRUTZ LLP
                                                    210 East Capital Street, Suite 2200
                                                    Jackson, MS 39201-2375
                                                    Telephone: (601) 960-8600
                                                    Email: mitch.mcguffey@formanwatkins.com

                                                    *Counsel for Petitioner North Point RX, LLC*

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing pleading was electronically filed with the

Clerk of Court on this the 3rd day of July 2025.


/s/ *Mitch McGuffey*
C. Mitch McGuffey

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSPPI**

NORTH POINT RX, LLC,

                Petitioner,

vs.

KEY THERAPEUTICS, LLC, a/k/a KEY
THERAPEUTICS, INC.,

                Respondent.

Civil Action No. 3:25-CV-20-KHJ-MTP

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS FIRST MOTION FOR CONTEMPT, SANCTIONS, AND RECEIVERSHIP

Petitioner North Point RX, LLC ("North Point") respectfully submits this Memorandum of Law in Support of its Motion for Contempt, Sanctions, and Receivership because of Respondent Key Therapeutics, LLC, a/k/a Key Therapeutics, Inc.'s ("Key") failure to comply with this Court's May 19, 2025 Order and Final Judgment.

## I. INTRODUCTION

On May 19, 2025, this Court granted North Point's Petition to Confirm Arbitration Award that ordered Key to:

1. deposit in the Bank Account opened and maintained in accordance with Section 3 of Schedule A to the Agreement the sum of $500,000;

2. comply with the requirements in Section 3 and deposit in the Bank Account the amount of $2,339,602.88, which represents the "Gross Sales," as defined in the Agreement;

3. not make any disbursements from, or otherwise encumber, the Bank Account, except (i) to pay "Commercialization Expenses" as defined in Section 3, or (ii) as otherwise approved in writing by North Point, which approval shall not be unreasonably withheld; and,

4.      restore North Point's access to view transactions occurring with the Bank Account and restore North Point's visibility to the Bank Account.

*See* ECF 27, pg. 14 (the "Order").  Key has not done numbers 1, 2, or 4 above.  Because North Point does not have access to the Bank Account, North Point cannot say whether Key has complied with number 3.[1]  This complete disregard for this Court's clear and explicit order warrants a harsh punishment from this Court, including finding Key in contempt, awarding sanctions, and appointing a receiver for Key pursuant to Federal Rule of Civil Procedure 66.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.      Relevant Procedural Background

On September 16, 2024, North Point filed a Petition to Confirm Arbitration Award ("Petition").  *See* ECF 1.  North Point filed the Petition because Key failed to comply with the October 18, 2023 Modified Final Order issued by the arbitrator.  *Id.*; *see also* Order at pgs. 1-3.[2] On January 3, 2025, Key filed a Motion to Vacate and an opposition to the Petition.  *See* Order at 4.  On May 19, 2025, this Court entered the Order.  The time for Key to appeal the Order has passed.

### B.      Relevant Factual Background

On January 19, 2023, Key terminated the parties Commercialization Agreement ("Agreement").  *See* ECF 1-2 at ¶ 7; *see also* 17-1 at pg. 2 (Key admits that it terminated the Agreement).  The Agreement provided for a 180 winddown period of the parties' business relationship.  *See* ECF 17-4 at § 10.2.3.  During this winddown period and after the expiration of the winddown period, money flowed into the parties' operating account.  *See* ECF 1-1 at ¶¶ 37-

---

[1] Key has not asked for approval to pay any Commercialization Expenses from North Point.

[2] As the Court noted in the Order, North Point had to ask the arbitrator to modify his order because of Key's non-compliance.  Non-compliance has become the norm for Key.

42.   Key then kept all of the money.   Key does not have the right to keep money that does not belong to it. The arbitrator ruled as such, and that arbitration ruling was confirmed by the Court. *See* ECF 27.[3]

In the end, (1) North Point had a valid contract with Key; (2) Key terminated that contract on January 19, 2023; (3) Key absconded with millions of dollars that did not belong to it; (4) an arbitrator entered an award in favor of North Point and against Key requiring Key to deposit $2,339,602.88 into the operating account; (5) Key never complied with the arbitration award; and (6) Key has not complied with the Order.   Key's continued non-compliance and efforts to delay the inevitable must end.

## III.   ARGUMENT

### A.   This Court should hold Key in contempt.

"We begin with the basic proposition that all orders and judgments of courts must be complied with promptly.   If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).   The purpose of a civil contempt order is generally to compel compliance. *See Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990). "Civil . . .contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance."   *McComb v.*

---

[3] During the arbitration award confirmation process, Key never directly says that it should not have to return the money to the Bank Account nor did it ever deny that the money belonged to North Point.  Moreover, Key never explained during the confirmation process why it could not comply with the arbitration award.  However, it is likely because the money is no longer available to Key, and Key is making every effort to avoid the inevitable.  Key's owner, Robert Sims, has demonstrated throughout this entire process that he believes that he is above the law.  His behavior is not that of a confused business owner, but rather a calculated effort to use others' money to finance his business or use such case as collateral.  He has shown contempt for contractual obligations, defied the authority of the arbitrator, and now ignored this Court.  His delay tactics and smear campaign against Mr. Tedrow in opposing the confirmation of the arbitrator's award has been all part to defraud North Point and avoid accountability. Enough is enough and this Court needs to hold that no one is above the law.

3

*Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (citations omitted).  Courts have inherent power to enforce their orders.  *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966).  To hold a party in contempt, the moving party must demonstrate "(1) that a court order was in effect; (2) that the order required certain conduct by the [defying party]; and (3) that the [defying party] failed to comply with the court's order."  *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) (citing *McComb*, 336 U.S. at 191).  The Fifth Circuit Court of Appeals has held that a contempt sanction is designed to "coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation."  *Quilling v. Funding Resource Group*, 227 F.3d 231, 234 (5th Cir. 2000) (citing *Lamar Fin. Corp.*, 918 F.2d at 566).  Good faith is not a defense to contempt – all that matters is whether the order was complied with or not by the party ordered to perform by the court.  *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002) (citations omitted).

North Point has satisfied the three elements of contempt.  There is no dispute that an Order is in effect [*see* ECF 27 and 28] requiring Key to perform certain obligations.  Further, there is no evidence that Key has complied with the Order.  Moreover, pursuant to Federal Rule of Civil Procedure 70(e), because Key has not complied with the Order requiring Key to perform specific acts, this Court can hold Key in contempt.  Thus, North Point respectfully requests that this Court find as such.

**B.       This Court should award sanctions in favor of North Point and against Key.**

Federal courts are vested with the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Clark v. Mortenson*, 93 F. App'x 643, 650 (5th Cir. 2004) (citing *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997)).  This Court has broad discretion to exercise its various sanctioning powers.  *Shipes v.*

*Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993) ("The imposition of sanctions is a matter of discretion for the district court"). Contempt sanctions come in two forms—criminal and civil. … which form a sanction takes depends on the "character of the relief itself," and not on the "subjective intent of . . . courts." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, (1994); *Shillitani*, 384 U.S. at 369 ("'It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish' civil from criminal contempt.") (quoting *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 441 (1911)). Generally, civil contempt "is remedial, and for the benefit of the complainant[,]" while criminal contempt "is punitive, to vindicate the authority of the court." *Bagwell*, 512 U.S. at 827-28.

"Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 587 U.S. 554, 560-61 (2019) (citing *United States v. Mine Workers*, 330 U.S. 258, 303–304 (1947)); D. Dobbs & C. Roberts, Law of Remedies § 2.8, p. 132 (3d ed. 2018); J. High, Law of Injunctions § 1449, p. 940 (2d ed. 1880)). "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts, such as the production of books . . . [and] the payment of money . . . ." *McComb*, 336 U.S. at 193-94 (1949) (citing *Penfield Co. v. Securities and Exchange Commission*, 330 U.S. 585, 590 (1947); *Gompers*, 221 U.S. at 442; *Oriel v. Russell*, 278 U.S. 358, 364 (1929)).

**1.      This Court should permit North Point to File a Fee Petition.**

North Point should not have had to file this motion. However, Key has shown an unwillingness to comply with its contractual obligations, multiple arbitration decisions, and now,

5

Key refuses to comply with the Order handed down by this Court.  Key has no excuse for its non-compliance.  This Court should permit North Point to file a petition to recoup its fees spent chasing Key, including the fees spent for the arbitration, the fees spent confirming the arbitration award, and now the fees seeking Key's compliance with the Order.  *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) (observing that courts may "order[] the award of attorneys' fees for compensatory purposes" where a party necessarily expended fees in bringing an action).  North Point suggests that since additional briefing will likely occur, and the possibility of oral argument, that at the conclusion of the contempt process, that North Point is permitted to file its fee petition.

### 2. This Court can impose a daily fine until Key complies.

This Court can also impose a daily fine against Key and Mr. Sims until Key complies with the Order.  *See In re White-Robinson*, 777 F.3d 792,798 (5th Cir. 2015).  North Point requests this Court impose a fine of $5,000.00 per day of noncompliance. North Point submits that the requested fine is an appropriate amount, in light of the character and magnitude of the harm likely to be caused by Key's continued noncompliance with the Order. Further, if Key has not complied within 30 days, North Point requests that the fine against Key also be increased to $10,000.00 per day going forward. *See, e.g., Eulich v. U.S.*, No. Civ.A.3:99CV1842-L, 2004 WL 1844821, at *6 (N.D. Tex., Dallas Div. Aug. 18, 2004) (upon finding of contempt for failure to produce documents, imposing fine of $5,000 per day for the first 30 days from the entry date of order, to be increased to $10,000 per day upon thirty-first day if noncompliance continues). North Point submits imposition of this fine would increase the likelihood of Key's compliance.

Moreover, responsibility for payment of the fine should also extend to Mr. Sims, the owner of Key.  Mr. Sims has demonstrated through his repeated actions that he believes he is above the law. His behavior is not that of a confused or misinformed business owner.  He has shown utter

6

contempt for contractual obligations, defied the authority of the arbitrator, and ignored this Court's Order. Enough is enough. North Point respectfully requests that this Court use its authority to compel compliance and the only way to achieve compliance is to have the owner of Key liable for the monetary sanction.

> ### *3.* **This Court should appoint a receiver to manage, oversee, and audit Key.**

Along with the above authority providing the court with broad discretion to fashion a remedy for contempt, this Court can appoint a receiver to manage Key. *See* Fed. R. Civ. Pro. 66. In determining whether there is a need for a receivership, courts have considered, among other factors, the inadequacy of available legal remedies and the probability that the harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment. 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2983 (2d ed. 2010) (citing authorities). "Appointment of a receiver is authorized by the inherent equitable power of a federal court." *U.S. v. Bartle*, 159 F. App'x 723, 725 (7th Cir. 2005) (citing *In re McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994)); *see also Morgan v. McDonough*, 540 F.2d 527, 533 (1st Cir. 1976) ("[R]eceiverships are and have for years been a familiar equitable mechanism. They are commonly a vehicle for court supervision of distressed businesses, but have not been limited to that role."); *United States v. Latney's Funeral Home, Inc.*, 41 F.Supp. 3d 24, 36-38 (D.D.C. 2014); *SEC v. Koenig*, 469 F.2d 198, 202 (2d Cir. 1972) (affirming a district court's appointment of a receiver to manage a corporation where a defendant violated an injunction).

Federal Rule of Civil Procedure 70(a) also allows this Court to issue an order to non-parties compelling the non-party to perform on behalf of the disobedient party. *See* Fed. R. Civ. Pro. 70(a). This Court can order the appointment of a trustee over Key, at Key's expense, to take all actions on behalf of Key necessary to comply with the Order. *Id.*; *see also Columbia Gas*

*Transmission Corp. v. Mangione Enters. of Turf Valley, L.P.*, 964 F.Supp. 199, 204 (D. Md. 1996) (recognizing that Rule 70 authorizes a court to appoint a trustee "to take all actions" on behalf of a recalcitrant party that are "necessary to comply" with the court's final order); *U.S. Bank Nat'l Ass'n v. Poblete*, No. 15-00312 (BAH), 2017 WL 4736712, at *4 (D.D.C., Oct. 19, 2017).

Here, Key has shown no willingness to comply with the arbitration decision that was later confirmed by this Court's Order. Receivership is an appropriate remedy to prevent Key from continuing to ignore the Order and potentially dissipate assets. Furthermore, the receiver will have the ability to uncover why Key no longer has the money that was supposed to remain in the Operating Account. It is clear that this Court must deprive Mr. Sims' control over Key by approving a receiver at Key's expense. Alternatively, this Court can appoint a trustee for the limited purpose of effectuating compliance with the Order. Key Therapeutics, LLC and its principal, Robert Sims, have not merely defied a lawful court order—they have engaged in conduct that constitutes serious financial crime under both federal and state law. Their willful appropriation of over $2.3 million belonging to North Point Rx is not a mere civil dispute but mirrors the elements of criminal offenses such as wire fraud (18 U.S.C. § 1343), embezzlement (18 U.S.C. § 666), and grand larceny under numerous state statutes, including Miss. Code Ann. § 97-17-41. The unlawful retention and concealment of funds following a contractual termination and arbitration ruling reflect an ongoing scheme to defraud and inflict economic injury. These acts surpass contempt—they are felonious thefts that would, in any jurisdiction, be classified as major financial crimes punishable by imprisonment. The continued concealment of the funds and refusal to comply with this Court's Final Judgment represents not only a direct affront to judicial authority but a clear indication of fraudulent intent and criminal culpability. The Court should not hesitate to treat this matter with the gravity it deserves and consider referring Key and Sims for criminal

8

investigation alongside imposing the civil sanctions and appointing a receiver to trace and recover stolen assets.

## IV.    CONCLUSION

As such, North Point respectfully requests that this Court find Key in contempt and award sanctions that includes (1) leave for North Point to file a petition for its fees incurred by North Point in prosecuting the arbitration claim against Key, bringing the Petition to Confirm, and bringing this Motion; (2) a daily fine against Key and Mr. Sims; and (3) the appointment of a receiver to oversee Key and uncover the whereabouts of the funds to ensure compliance with the Order.[4]

Date:  July 3, 2025                                         Respectfully submitted,


s/ *Mitch McGuffey*
C. Mitch McGuffey (MS Bar No. 104986)
FORMAN WATKINS & KRUTZ LLP
210 East Capital Street, Suite 2200
Jackson, MS 39201-2375
Telephone: (601) 960-8600
Email: mitch.mcguffey@formanwatkins.com

*Counsel for Petitioner North Point RX, LLC*

---

[4] North Point further suggests that this Court can order Key to comply with the Order or face additional sanctions, which could include confinement (*see Santibanez v. Wier McMahon & Co., 105 F.3d 234, 243 (5th Cir. 1997) (*recognizing confinement as a "paradigmatic coercive, civil contempt sanction"*); U.S. v. Brewer, No. 93-1168, 1993 WL 277216, at \*1, (5th Cir. July 23, 1993)* (upholding district court's civil contempt order incarcerating defendant until contempt purged by answering an IRS summons and producing records)) or referral to the United States attorney to investigate whether Key violated 18 U.S.C. § 1343 (wire fraud) or 18 U.S.C. § 666 (embezzlement) based on Key's misappropriation of over $2.8 million from the Bank Account.

9

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing pleading was electronically filed with the

Clerk of Court on this the 3rd day of July 2025.

s/ *Mitch McGuffey*
C. Mitch McGuffey